ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-40074-JAR |
| | ) | |
| ROBERT LEE JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on defendant Robert Lee Johnson's Motion to Suppress (Doc. 41). The Court conducted an evidentiary hearing on defendant's motion on July 13, 2009. Having reviewed the parties' filings and the evidence adduced at the hearing, the Court is prepared to rule. For the reasons stated below, defendant's motion to suppress is denied.

## I.    Factual Background

On September 14, 2007, defendant was placed on parole after a period of Kansas state custody for a felony drug crime. On October 4, 2007, defendant signed an agreement providing for conditions of his release on parole and post release supervision. That agreement provided, in part: "I agree to . . . [n]ot associate with persons actively engaged in illegal activity. . . . [and] [b]e subjected to a search by parole officers or designated law enforcement officers of my person, residence, and any other property under my control."[1] The agreement also requires defendant to obey all federal and state laws.

_____

[1](Ex. 1.)

On April 18, 2008, David Quintanar, a Kansas Department of Corrections ("KDOC") parole officer, conducted a scheduled meeting with defendant in Junction City, Kansas. Officer Quintanar was defendant's regular parole officer. Officer Quintanar testified that defendant normally exhibited a calm demeanor. On April 18, however, Officer Quintanar observed that defendant was extremely nervous and repeatedly referred to certain contents in his car and to contact he had the day before with law enforcement. Defendant told Officer Quintanar that he had been riding in his car with another parolee, Robert West, who had left his clothes in defendant's car after officers arrested West on domestic violence charges. Officer Quintanar asked defendant if he could search the vehicle, and defendant agreed.

Officer Khalil Green assisted Officer Quintanar in searching the vehicle while defendant stood on the sidewalk and watched. In the trunk of the vehicle, Officer Quintanar noticed bags of clothing and a red duffel bag. When Officer Quintanar lifted the red duffel bag, he noticed defendant ten to fifteen feet away, talking on the phone, and heard him say that he "might be going to jail today" and asked the person he was talking to to pick up his car. Officer Quintanar thought this comment was strange, as he did not believe defendant would have any reason to believe at that point that he would be going to jail. Officer Quintanar decided to take defendant back into the office and asked him about the red duffel bag. Defendant said it belonged to West. Officer Quintanar asked defendant what was in the red bag; defendant responded that he thought a firearm was in the bag.

Officer Quintanar told defendant that he was going back to the vehicle to get the red duffel bag and defendant said "fine." Officer Quintanar retrieved the red duffel bag from defendant's vehicle and found clothing and an unloaded semi-automatic firearm inside the bag.

The Indictment charges defendant with being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g).

## II.    Analysis

Defendant argues that the search of his car was illegal because, (1) as a parolee, he cannot be subjected to a search without reasonable suspicion, and (2) he did not provide voluntary consent to search because he mistakenly believed that he was subject to search at any time under the parole agreement.  The government agrees that the search required reasonable suspicion, but contends that Officer Quintanar had developed reasonable suspicion to search the vehicle during his meeting with defendant.  The government also contends that defendant's consent could not have been influenced or tainted by an agreement he signed seven months prior to the search.

There are two exceptions to the warrant requirement for parolee searches: (1) the "special need exception" allows a parole officer to search parolees in compliance with a parole agreement provision based on the rehabilitative relationship between the parolee and the parole officer;[2] and (2) searches performed in compliance with a valid parole agreement, even if not performed by a parole officer, may be constitutional based on the diminished expectation of privacy associated with the parole agreement and the state regulations applicable to the defendant's case.[3]

Both the Tenth Circuit and the Supreme Court of Kansas have concluded that Kansas law

---

[2]*United States v. Freeman*, 479 F.3d 743, 747–48 (10th Cir. 2007) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)).

[3]*Id.* (citing *Samson v. California*, 547 U.S. 843, 851–56 (2006); *United States v. Knights*, 534 U.S. 112, 118 (2001)).

does not authorize suspicionless searches for parolees.[4]  Both courts base their findings on the absence of a Kansas statute authorizing suspicionless searches for parolees and on the KDOC's Internal Management Policies and Procedures (IMPPs) in place at the time of those decisions. The parties in this matter appear to agree that under Kansas law, Officer Quintanar was authorized to search defendant's vehicle if he developed reasonable suspicion that a condition of defendant's parole had been violated.[5]

Reasonable suspicion means "a particularized and objective basis for suspecting criminal activity."[6]  The Court should "consider the quantity and reliability of the information possessed by law enforcement and consider this information in light of the totality of the circumstances."[7] Here, the Court must evaluate whether Officer Quintanar developed reasonable suspicion prior to searching the vehicle the first time.  Officer Quintanar would not have overheard defendant's phone conversation, where he stated he might be going to jail, without finding the red duffel bag during that initial search.  The only information that Officer Quintanar possessed at the time of this initial search was defendant's agitation and repeated references to his encounter the previous day with law enforcement and the items that West left in his car.  Officer Quintanar stated in his report and testified that "something did not sound right."  Officer Quintanar observed that

---

[4]*Id.* at 744; *Kansas v. Bennett*, 200 P.3d 455, 462–63 (Kan. 2009); *see also Kansas v. Haffner*, –P.3d–, 2009 WL 1705713, at *4 (Kan. Ct. App. June 19, 2009) ("In Kansas, the search of a parolee's person or property is reasonable if it is supported by reasonable suspicion that the parolee has violated a condition of release and if it is conducted by a (SEO).").

[5]Neither party submitted as evidence the IMPP in place at the time of the search.  It appears that IMPP 14-164, discussed in the *Bennett* case, has been removed since that case was decided.  Likewise, the provision in Bennett's parole agreement stating that a parole officer or Special Enforcement Officer may conduct a search if suspicion exists, is not present in this defendant's parole agreement.  *See Bennett*, 200 P.3d at 462.

[6]*Freeman*, 479 F.3d at 748.

[7]*Id.* at 749.

4

defendant was acting very nervously, especially compared to his usual calm demeanor.

The difficulty with Officer Quintanar's reliance on defendant's nervousness is that it is the sole basis upon which he claims to have developed reasonable suspicion to search the vehicle.  While nervousness is certainly a pertinent factor that Officer Quintanar could analyze in developing reasonable suspicion, it cannot alone support reasonable suspicion.[8]  Moreover, it is unclear what condition of defendant's parole Officer Quintanar suspected defendant violated.  While defendant agreed in the parole agreement not to actively associate with persons engaged in criminal activity, it does not appear that Officer Quintanar suspected defendant violated this provision.  Defendant told him that he had contact with law enforcement when he went to pick up West for work the day before.  While Officer Quintanar knew that West was also a parolee, he did not testify that he believed defendant was associating with someone who was engaged in criminal activity.  The Court is unable to find, on this record, that Officer Quintanar's search of defendant's vehicle was based on reasonable suspicion that defendant had violated a condition of his parole.

Alternatively, the government urges that defendant consented to the search of his vehicle. The validity of consent is "based upon the totality of the circumstances as to 'whether the consent was the product of an essentially free and unconstrained choice by the maker or whether it was the product of duress or coercion, express or implied.'"[9] The court should consider the following relevant circumstances: "physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and

---

[8]*See United States v. Johnson*, 364 F.3d 1185, 1192 (10th Cir. 2004).

[9]*Eidson v. Owens*, 515 F.3d 1139, 1146 (10th Cir. 2008) (quoting *United States v. Sawyer*, 441 F.3d 890, 895 (10th Cir.), *cert. denied*, 549 U.S. 823 (2006)).

capacity of the defendant, the number of officers on the scene, and the display of police weapons."[10]

Defendant contends that his consent was not valid because, pursuant to the parole agreement, he believed that he was subject to suspicionless searches by his parole officer. Therefore, defendant did not believe he had the right to refuse consent. To be sure, the parole agreement does not include a caveat in the search provision that searches may only be conducted based on reasonable suspicion.[11] However, there is no evidence that defendant relied on this fact when he consented to the search at issue. Defendant signed the parole agreement in October 2007, approximately six months prior to the search. There is no evidence that Officer Quintanar raised his voice, displayed a weapon, mistreated or threatened defendant, deceived defendant, or otherwise displayed any sign of force or coercion in obtaining defendant's consent to search. Officer Quintanar asked for defendant's permission to search and defendant agreed. Officer Quintanar's report indicates that "I informed the offender that I wanted to search the car and clear him of anything that may belong to West that could get the offender in trouble. The offender agreed to let us search the vehicle."[12] The Court finds, based on the totality of the circumstances, defendant's consent was a free and unrestrained choice. Because defendant consented to the search of the vehicle, the Court denies defendant's motion to suppress the evidence obtained during that search.

---

[10]*Id.* (citation omitted).

[11]*See Kansas v. Bennett*, 200 P.3d 455, 462 (Kan. 2009) (discussing parole agreement pursuant to the "current IMPP" that states: "My parole officer or a Special Enforcement Officer may conduct a search *if suspicion exists* that I have violated the conditions of my release or that a search is necessary to the performance of the parole officer's duties in the supervision or enforcement of my release conditions.").

[12](Ex. 400.)

**IT IS THEREFORE ORDERED BY THE COURT** that  defendant Robert Lee

Johnson's Motion to Suppress (Doc. 41) is **denied**.

Dated:  <u>August 10, 2009</u>

<u> S/ Julie A. Robinson                    </u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE